**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dawn Marie Krider, | No. CV-22-00864-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff challenges the denial of her application for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 12), the Commissioner's answering brief (Doc. 14), and Plaintiff's reply (Doc. 17), as well as the Administrative Record (Doc. 9, "AR"), and now affirms the Administrative Law Judge's ("ALJ") decision.

I.      Procedural History

On August 19, 2020, Plaintiff filed an application for disability and disability insurance benefits, alleging disability beginning on May 25, 2019. (AR at 13.) The Social Security Administration ("SSA") denied Plaintiff's applications at the initial and reconsideration levels of administrative review and Plaintiff requested a hearing before an ALJ. (*Id.*) On December 29, 2021, following a telephonic hearing, the ALJ issued an unfavorable decision. (*Id.* at 13-28.) The Appeals Council later denied review. (*Id.* at 1-4.)

II.   The Sequential Evaluation Process And Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III.   The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial, gainful work activity since the alleged onset date and that Plaintiff had the following severe impairments: "osteoarthritis of the right hip, trochanteric bursitis of the right hip, lumbar degenerative disc disease, status-post excision of Morton's neuroma of the right foot, and a bipolar disorder." (AR at 16.)  Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing.  (*Id*. at 16-19.)  Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can frequently operate foot controls with her right lower extremity.  She can occasionally stoop, crouch, crawl, kneel, balance as defined in the DOT, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds.  She can perform work involving understanding, remembering, and carrying out simple instructions, consistent with an SVP of 2 or below.  The claimant can perform work involving occasional routine changes in the work setting.  She can work with no production rate work, such as that found on an assembly line.

(*Id*. at 19-20.)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (*Id*. at 21.)  The ALJ also evaluated opinion evidence from various medical sources, concluding as follows: (1) State agency medical consultants ("generally persuasive"); (2) Keith Cunningham, M.D., consultative examiner ("more persuasive"); (3) Charles Clark, M.D. ("not persuasive"); (4) State agency psychological consultants ("only somewhat persuasive"); and (5) Elizabeth Munshi, M.D., treating provider ("not persuasive").  (*Id*. at 24-26.)  Additionally, the ALJ evaluated a third-party statement from Plaintiff's spouse ("not persuasive") and acknowledged Plaintiff's service connection and disability ratings by the Department of Veterans Affairs ("neither valuable

1   nor persuasive").  (*Id.* at 21, 26.)

2       Based on the testimony of a vocational expert, the ALJ concluded that although

3   Plaintiff could not perform her past relevant work as a telephone solicitor, teacher, or

4   landscape drafter, Plaintiff was able to perform other jobs that exist in significant numbers

5   in the national economy, including office clerk, ticket taker, and routing clerk.  (*Id.* at 26-

6   28.)  Thus, the ALJ concluded that Plaintiff is not disabled.  (*Id.* at 28.)

7   IV.   <u>Discussion</u>

8       Plaintiff presents three issues on appeal: (1) whether the ALJ improperly discredited

9   the medical opinions of Charles Clark, M.D.; (2) whether the ALJ improperly discredited

10   the medical opinions of Elizabeth Munshi, M.D.; and (3) whether the ALJ improperly

11   discredited Plaintiff's symptom testimony.  (Doc. 12 at 1-2.)  Plaintiff further argues that

12   "[r]emand for calculation of benefits would be an appropriate remedy in this case.  Only in

13   the alternative should this Court remand for further administrative proceedings."  (*Id.* at

14   25.)

15       A.   **Dr. Clark**

16         1.   <u>Standard of Review</u>

17       In January 2017, the SSA amended the regulations concerning the evaluation of

18   medical opinion evidence.  *See Revisions to Rules Regarding Evaluation of Medical*

19   *Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017).  Because the new regulations apply to

20   applications filed on or after March 27, 2017, they are applicable here.

21       The new regulations, which eliminate the previous hierarchy of medical opinions,

22   provide in relevant part as follows:

23       We will not defer or give any specific evidentiary weight, including
          controlling weight, to any medical opinion(s) or prior administrative medical

24       finding(s), including those from your medical sources . . . .  The most
          important factors we consider when we evaluate the persuasiveness of

25       medical opinions and prior administrative medical findings are supportability
          . . . and consistency . . . .

26

27   20 C.F.R. § 416.920c(a).[1]  Regarding the "supportability" factor, the new regulations

28

---

[1]    Other factors that may be considered by the ALJ in addition to supportability and

1   explain that the "more relevant the objective medical evidence and supporting explanations

2   presented by a medical source are to support his or her medical opinion(s), . . . the more

3   persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1).   Regarding the

4   "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence

5   from other medical sources and nonmedical sources in the claim, the more persuasive the

6   medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2)

7          Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security

8   Administration's regulations displace our longstanding case law requiring an ALJ to

9   provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion."

10  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).   Thus, "the former hierarchy of

11  medical opinions—in which we assign presumptive weight based on the extent of the

12  doctor's relationship with the claimant—no longer applies.   Now, an ALJ's decision,

13  including the decision to discredit any medical opinion, must simply be supported by

14  substantial evidence." *Id.*  With that said, "[e]ven under the new regulations, an ALJ cannot

15  reject an examining or treating doctor's opinion as unsupported or inconsistent without

16  providing an explanation supported by substantial evidence.   The agency must articulate

17  how persuasive it finds all of the medical opinions from each doctor or other source and

18  explain how it considered the supportability and consistency factors in reaching these

19  findings."  *Id.* at 792 (cleaned up).   Although an "ALJ can still consider the length and

20  purpose of the treatment relationship, the frequency of examinations, the kinds and extent

21  of examinations that the medical source has performed or ordered from specialists, and

22  whether the medical source has examined the claimant or merely reviewed the claimant's

23  records . . . the ALJ no longer needs to make specific findings regarding these relationship

24  factors . . . ." *Id.*

25          …

26          …

27  _____

28  consistency include the provider's relationship with the claimant, the length of the
    treatment relationship, the frequency of examinations, the purpose and extent of the
    treatment relationship, and the specialization of the provider.  20 C.F.R. § 416.920c(c).

1       2.      Dr. Clark's Opinions

2               On July 1, 2021, Dr. Clark filled out a form entitled "Medical Assessment Of Ability

3       To Do Work-Related Physical Activities."  (AR at 1054-55.)  In the form, Dr. Clark

4       checked boxes indicating that, during an 8-hour workday, Plaintiff would be able to sit for

5       less than 2 hours, stand/walk for less than 2 hours, lift less than 10 pounds, and carry less

6       than 10 pounds. (*Id.*)  Dr. Clark also checked boxes indicating that Plaintiff would need to

7       alternate between sitting, standing, or walking every 1-20 minutes; would need a 15+

8       minute rest period after every change in position; and would be limited to "Less than

9       occasional" (which was defined as 0-20%) bending, reaching, and stooping. (*Id.*)  Dr.

10      Clark also checked boxes indicating that Plaintiff had "cognitive or pace limitations" that

11      would inhibit the completion of more than one- and two-step job duties and cause "severe"

12      interruptions of Plaintiff's work pace and that Plaintiff suffered from headaches or mental

13      fatigue more than four times a month and, as a result, would need to rest for more than two

14      hours on each day present. (*Id.*)  Finally, Dr. Clark checked a box indicating that Plaintiff

15      would need to miss 6+ days of work each month due to her conditions. (*Id.*)

16      3.      The ALJ's Evaluation Of Dr. Clark's Opinions

17              The ALJ found Dr. Clark's opinions "not persuasive." (*Id.* at 24-25.)  After

18      summarizing Dr. Clark's opinions, the ALJ provided the following rationale for

19      discrediting them:

20              [Dr. Clark's opined-to] limits are excessive in light of his own examinations.
                Of note, he recorded that the claimant's bursitis was responding well to
21              conservative treatment and Lyrica was managing her pain.  Significantly, he
                regularly noted that she was in no acute distress.  He often did not perform
22              detailed musculoskeletal or neurological examinations, suggesting that this
                report relies more on the claimant's subjective reports than objective findings
23              on examination.  When he did record detailed examination findings, mild
                abnormalities were record[ed].  For example, gait was mildly antalgic with
24              no mention of an assistive device.  Strength was grossly intact, although
                dorsiflexion was 5- out of 5 in her right foot. Sensation and reflexes were
25              grossly intact as well.  He did, however, generally indicate that lumbar range
                of motion restricted and painful with tenderness to palpation over the lumbar
26              paraspinal musculature.  He also noted that she had increased pain with
                resisted hip flexion and a positive FABER test in the hip.  Nevertheless, he
27              completed no cognitive assessments to substantiate his opinion regarding
                cognitive or pace limitations.  Indeed, none of these abnormalities are
28              indicative of the degree of limitation that he opines.  Nor are they consistent
                with the mild findings on imaging or the frequency with which normal

1    examination findings were otherwise noted.  For these reasons, this opinion
2    is not persuasive.

3    (*Id.* at 25, record citations omitted.)

4            4.    The Parties' Arguments

5            Plaintiff argues that "[t]he ALJ's reasons to find Dr. Clark's . . . assessments not

6    persuasive were insufficient."  (Doc. 12 at 12.)  As for the ALJ's observation that "at one

7    treatment visit . . . Dr. Clark thought [Plaintiff's] bursitis was responding to conservative

8    treatment and Lyrica was 'managing' her pain," Plaintiff contends that "this reasoning

9    ignores that at that visit [Plaintiff] was reporting bilateral hip pain, consistent with Dr.

10   Clark's assessment findings.  The ALJ did not explain how this one comment cancelled

11   out findings at other visits both before and after, where [Plaintiff] continued to report

12   ongoing pain in her foot and hip and low back pain, and Dr. Clark continued to manage

13   [Plaintiff's] medications and refer her to specialists."  (*Id.*)  Plaintiff further argues that

14   "the ALJ's belief that Dr. Clark's assessment was inconsistent with or unsupported by the

15   records is incongruent with the ALJ's statement that Dr. Clark 'did however, generally

16   indicate that lumbar range of motion restricted and painful with tenderness to palpation

17   over the lumbar paraspinal musculature.  He also noted that she had increased pain with

18   resisted hip flexion and a positive FABER test in the hip.'  The ALJ's acknowledgement

19   that Dr. Clark observed signs and symptoms consistent with and supportive of Dr. Clark's

20   assessed limitations should have resulted in a finding that Dr. Clark's assessment was

21   persuasive."  (*Id.* at 12-13.)  Next, as for the ALJ's assertion that "Dr. Clark 'often did not

22   perform detailed musculoskeletal or neurological examinations, suggesting that this report

23   relies more on the claimant's subjective reports than objective findings on examination,'"

24   Plaintiff responds that the mere fact "that Dr. Clark did not perform a physical examination

25   at every visit does not render his assessment invalid.  All of [Plaintiff's] medical treatment

26   was within the VA medical system, so Dr. Clark had access to all of [Plaintiff's] treatment

27   records from other providers, supervised her treatment, and was aware of all of her

28   conditions.  That Dr. Clark did not personally examine her at every visit does not invalidate

his assessed limitations." (*Id.* at 13-14.)  Additionally, Plaintiff contends that many of the relevant examinations occurred during the COVID-19 pandemic, when telehealth appointments were prevalent, and more broadly argues that "a doctor's reliance on the subjective symptom reports of their patient is not a reasonable basis on which to base rejection of a medical opinion, when there is no evidence that the doctor relied only on subjective reports, and when the patient's subjective symptoms are otherwise corroborated throughout the medical evidence." (*Id.* at 14-15.)  As for the ALJ's observation that Dr. Clark "completed no cognitive assessments to substantiate his opinion regarding cognitive or pace limitations," Plaintiff argues that "Dr. Clark did not have to complete a cognitive assessment to substantiate his own opinion on how his own patient would likely function in a workplace in the context of her chronic physical pain.  The ALJ's requirement of extra testing to substantiate a treating doctor's opinion about their own patient is baseless and fails to invalidate Dr. Clark's assessment." (*Id.* at 15.)  Finally, as for the ALJ's observation that "Dr. Clark wrote in treatment notes that [Plaintiff] was in no acute distress," Plaintiff responds: "[T]hat [Plaintiff] was not in acute distress at appointments is not relevant, when [Plaintiff] suffered from *chronic* pain." (*Id.* at 15-16.)

The Commissioner disagrees and defends the sufficiency of the ALJ's rationale for discrediting Dr. Clark's opinions.  (Doc. 14 at 5-10.)  As for the supportability factor, the Commissioner argues that the ALJ permissibly found that "Dr. Clark's opinion was at odds with his treatment notes" because the notes reflected that (1) Plaintiff's bursitis responded well to treatment, (2) Plaintiff's pain was controlled with medication, (3) Plaintiff was not in acute pain, (4) Dr. Clark did not perform many detailed musculoskeletal or neurological examinations, and (5) the few such examinations that Dr. Clark did perform revealed "only mild abnormalities." (*Id.* at 6-7.)  As for the consistency factor, the Commissioner argues that it was permissible for the ALJ to discount Dr. Clark's opinions in light of their inconsistency with "[i]maging findings [that] were mild" and "other examination findings [that] were also frequently normal." (*Id.* at 7.)  The Commissioner also contends that most of the cases cited by Plaintiff are distinguishable because they applied the old regulations.

(*Id.* at 7-8.)  As for Plaintiff's observation that in-person visits were limited during the pandemic, the Commissioner responds that "[t]his may be true, but it does not make Dr. Clark's opinion more persuasive.  The regulations require objective medical evidence; without such evidence to support Dr. Clark's opinion, it was less persuasive."  (*Id.* at 8.)  As for Plaintiff's contention that the ALJ's rationale was internally contradictory because the ALJ acknowledged that some of Dr. Clark's treatment notes reflected abnormal (albeit still "mild") findings, the Commissioner argues that "the Court should not punish the ALJ for acknowledging contradictory evidence in the record," that it was the ALJ's role to resolve ambiguities, and that the ALJ was therefore "entitled to rely on the normal findings."  (*Id.*)  As for Plaintiff's contention that "because Dr. Clark had access to her treatment records, supervised her treatment, and was aware of all her conditions, that meant he did not need to personally examine her," the Commissioner responds that "[e]ven if Dr. Clark reviewed other providers' findings, Dr. Clark's opinion remained unpersuasive. Indeed, Plaintiff does not identify *any* supportive examination results from other providers, despite her obligation to provide evidence to support her claim."  (*Id.* at 9.)  Finally, as for Plaintiff's contention that Dr. Clark "did not have to complete a cognitive assessment to substantiate his own opinion," the Commissioner responds that this argument is based on "abrogated caselaw" and overlooks that the new regulations "*require* an opinion to be supported by objective medical evidence (or a supporting explanation)."  (*Id.* at 9-10.)

In reply, Plaintiff argues as follows: "[Plaintiff] will not reiterate each of her arguments for each reason the ALJ found to reject Dr. Clark's assessment of [Plaintiff's] limitations.  The Commissioner responds to each of these arguments about the reasons to reject Dr. Clark's assessments by repeating the ALJ's rationale, stating the ALJ's reasoning was 'reasonable' or simply supported by substantial evidence, or dismissing [Plaintiff's] arguments with the misguided notion that [Plaintiff] relied on bad law.  This is not a meaningful response."  (Doc. 17 at 6-7.)

…

…

- 9 -

1          5.    Analysis

2          The ALJ's evaluation of Dr. Clark's opinions is free of harmful error.  "The agency

3    must articulate how persuasive it finds all of the medical opinions from each doctor or other

4    source and explain how it considered the supportability and consistency factors in reaching

5    these findings."  *Woods*, 32 F.4th at 792 (cleaned up).  Here, the ALJ expressly considered

6    both of the required factors in relation to Dr. Clark.  (AR at 25 ["These limits are excessive

7    in light of his own examinations. . . .  Nor are they consistent with the mild findings on

8    imaging or the frequency with which normal examination findings were otherwise

9    noted."].)

10         The ALJ's determination as to each factor was also supported by substantial

11   evidence.  As for the supportability factor, the ALJ identified a variety of reasons why Dr.

12   Clark's opinions were inconsistent with Dr. Clark's treatment notes.  The Court will focus

13   on one of those areas of perceived inconsistency because it is dispositive.  The ALJ

14   explained that "[w]hen [Dr. Clark] did record detailed examination findings, mild

15   abnormalities were record[ed].  For example, gait was mildly antalgic with no mention of

16   an assistive device.  Strength was grossly intact, although dorsiflexion was 5- out of 5 in

17   her right foot.  Sensation and reflexes were grossly intact as well.  He did, however,

18   generally indicate that lumbar range of motion restricted and painful with tenderness to

19   palpation over the lumbar paraspinal musculature.  He also noted that she had increased

20   pain with resisted hip flexion and a positive FABER test in the hip.  Nevertheless, . . . none

21   of these abnormalities are indicative of the degree of limitation that he opines."  (*Id.* at 25.)

22   In the Court's view, it was rational for the ALJ to conclude that these largely normal (albeit

23   not fully normal) clinical observations were inconsistent with Dr. Clark's extreme opinions

24   regarding Plaintiff's physical limitations, including that Plaintiff would need to rest for

25   more than 15 minutes each time she alternated between sitting, walking, and standing and

26   that Plaintiff could lift less than 10 pounds.  (AR at 1054.)  Although Plaintiff attempts to

27   explain how such observations could be construed as consistent with Dr. Clark's opinions,

28   it was rational for the ALJ to conclude otherwise.  *Ghanim v. Colvin*, 763 F.3d 1154, 1163

(9th Cir. 2014) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.") (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004)).

In a related vein, the Court disagrees with Plaintiff's contention that, because the ALJ acknowledged that some of Dr. Clark's notes reflected abnormal examination findings, it was "inconsistent" for the ALJ to find a conflict between Dr. Clark's notes and Dr. Clark's opinions.  (Doc. 12 at 13.)   There was no inconsistency here—the ALJ rationally concluded that the mildly abnormal findings reflected in the examination notes were inconsistent with the extreme limitations to which Dr. Clark opined.  *Cf. Deacon v. Kijakazi*, 2022 WL 17363228, *10 (E.D. Cal. 2022) ("The Court finds that the ALJ properly evaluated the persuasiveness of Dr. Santaniello's 2016 opinion by considering the factors of supportability and consistency.  First, the ALJ determined that Dr. Santaniello's opinion was supported by the examination findings, including positive Tinel's test bilaterally and tenderness to palpitation, but normal ROM (range of motion) in the bilateral hands, and normal ROM and stability in the bilateral shoulders.  This reasoning invokes the supportability factor, which means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'") (citation omitted).  Given this conclusion, it is unnecessary to resolve Plaintiff's challenges to the ALJ's other proffered reasons for concluding that Dr. Clark's opinions lacked support in Dr. Clark's treatment records.  *See, e.g., Reed v. Saul*, 834 F. App'x 326, 329 (9th Cir. 2020) ("To the extent the ALJ erred in discounting the opinions of Dr. Cochran because her opinions were based in part on Reed's self-reports of his symptoms, that error is harmless because the ALJ offered multiple other specific and legitimate reasons for discounting Dr. Cochran's opinions."); *Baker v. Berryhill*, 720 F. App'x 352, 355 (9th Cir. 2017) ("Two of the reasons the ALJ provided for discounting examining psychologist Dr. Wheeler's opinion were not legally valid . . . [but] the ALJ provided other specific and legitimate reasons for discounting Dr. Wheeler's opinion. . . .  As a result, any error was harmless."); *Presley-Carrillo v. Berryhill*, 692 F. App'x 941, 944-45 (9th Cir. 2017) ("The

1    ALJ also criticized Dr. Van Eerd's opinion in part because Dr. Van Eerd did not define the
2    terms 'mild,' 'moderate,' or 'severe' in his assessment.  This criticism was improper . . .
3    [but] this error was harmless because the ALJ gave a reason supported by the record for
4    not giving much weight to Dr. Van Eerd's opinion—specifically, that it conflicted with
5    more recent treatment notes from Dr. Mateus.").

6         The ALJ's analysis of the consistency factor is free of harmful error for the same
7    reasons as the ALJ's analysis of the supportability factor.  The ALJ correctly noted (AR at
8    22-23) that the examination notes from other medical providers reflected either normal or
9    slightly abnormal findings with respect to Plaintiff's ability to sit, stand, walk, and lift.
10   (*See, e.g.*, *id.* at 879-81 [December 2020 consultative examination note, reflecting ability
11   to stand, walk, mount the examination table, stand on either foot, and squat independently
12   and with minimal difficulty]; *id.* at 1050 [April 2021 consultative examination note,
13   reflecting same observations]; *id.* at 1079 [June 2021 note: "Ambulating without assistive
14   device.  Mildly antalgic."]; *id.* at 1081 [June 2021 study, showing "no acute osseous
15   abnormalities or advanced arthrosis" and "unremarkable" lower lumbar spine].)  It was
16   rational for the ALJ to construe those records as inconsistent with Dr. Clark's extreme
17   opined-to limitations.

18        B.    **Dr. Munshi**

19             1.    Standard of Review

20        Plaintiff's challenge to the ALJ's evaluation of Dr. Munshi's opinions is governed
21   by the same standard of review as Plaintiff's challenge to the ALJ's evaluation of Dr.
22   Clark's opinions.

23             2.    Dr. Munshi's Opinions

24        On February 4, 2021, Dr. Munshi filled out a form entitled "Medical Assessment
25   Of Claimant's Ability To Perform Work Related Activities (Mental)."  (AR at 886-87.)  In
26   the form, Dr. Munshi circled boxes indicating that, as a result of Plaintiff's mental status,
27   Plaintiff would have "moderately severe" limitations in her ability to understand, carry out,
28   and remember instructions and to respond to customary work pressures; would have

1  "moderate" limitations in her ability to respond appropriately to supervision and respond

2  appropriately to co-workers; and would have "mild" limitations in her ability to perform

3  simple tasks.  (*Id.* at 886.)[2]  Dr. Munshi also circled a box indicating that Plaintiff would

4  have "moderately severe" limitations in her sustainability of work pace.  (*Id.* at 887.)

5  Nowhere in the form did Dr. Munshi provide any narrative explanation for these opined-

6  to limitations.  (*Id.*)

7  On November 2, 2021, Dr. Munshi filled out the same form in an identical fashion.

8  (*Id.* at 1171-72.)  As before, Dr. Munshi did not provide any narrative explanation for the

9  opined-to limitations.  (*Id.*)

10  ### 3.  The ALJ's Evaluation Of Dr. Munshi's Opinions

11  The ALJ found Dr. Munshi's opinions "not persuasive."  (*Id.* at 25-26.)  After

12  summarizing Dr. Munshi's opinions, the ALJ provided the following rationale for

13  discrediting them:

> At the outset, the undersigned observed that this opinion is vague, as it focuses on degree of limitation rather than residual function and the degree of limitation is expressed in a manner not wholly congruent with the descriptors used by the Social Security Administration for assessing mental limitations.  Further, her statements that the claimant is totally unemployable are decisions of disability reserved to the Commissioner and are therefore inherently neither valuable nor persuasive.  Significantly, the degree of limitation expressed by Dr. Munshi is contrary to her own statements in treatment records declaring the claimant competent to manage her own finances and capable of weighing the risks and benefits of giving or withholding information regarding psychiatric and suicidal status.  Indeed, it is contrary to the statements of the claimant's counselor, who saw the claimant more frequently than Dr. Munshi, and reported that the claimant was a "coherent, intelligent, problem-solver who is fully capable of handling own finances."  Dr. Munshi's own treatment notes document some frustrated or down mood, but with polite, pleasant, and cooperative demeanor and linear thoughts, no suicidal ideations, improved insight, and intact judgment.  Treatment notes from other providers were substantially similar, indicating greater mental function than was expressed in this opinion.  Because this opinion is vague, contrary to notations in Dr. Munshi's treatment and examination notes, and inconsistent with the record, it is not persuasive.

(*Id.* at 26, record citations omitted.)

---

[2]  The form identified "mild" as "Off task 1—10% of an 8-hour work day," "moderate" as "Off task 11—15% of an 8-hour work day," and "moderately severe" as "Off task 16—20% of an 8-hour work day."  (*Id.* at 887.)

1

4.     The Parties' Arguments

2      Plaintiff argues that "[t]he ALJ's reasons to find . . . Dr. Munshi's assessments not

3   persuasive were insufficient."  (Doc. 12 at 12.)  As for the ALJ's observation that "Dr.

4   Munshi's assessments were vague," Plaintiff responds that "the terms used on the

5   assessment forms Dr. Munshi completed were defined, and those definitions were not so

6   vague that the agency's own vocational expert could not understand them." (*Id.* at 16.)  As

7   for the ALJ's contention that Dr. Munshi improperly opined on matters reserved for the

8   Commissioner, Plaintiff responds that "Dr. Munshi did not just state that [Plaintiff] was

9   unemployable, Dr. Munshi provided specific work-related limitations in multiple areas."

10  (*Id.* at 16-17.)  As for the ALJ's contention that Dr. Munshi's opinions were inconsistent

11  with observations in Dr. Munshi's and RN Compton's treatment notes regarding finance

12  management, Plaintiff responds that the mere fact she "was intellectually competent and

13  could manage her own VA benefits does not mean that overall, [she] was not suffering

14  from a degree of depression and anxiety congruent with Dr. Munshi's assessed limitations.

15  . . .  [W]ant[ing] her VA ratings decision to state that she could oversee her own VA

16  benefits does not invalidate Dr. Munshi's assessment of [her] work-related limitations

17  because of her depression and anxiety."  (*Id.* at 17-18.)  Similarly, as for the ALJ's

18  contention that Dr. Munshi's opinions were inconsistent with observations in Dr. Munshi's

19  and other providers' treatment notes reflecting intact judgment and insight, Plaintiff argues

20  that "the ALJ did not explain how the ALJ's noted findings cancelled out the other findings

21  of depression and anxiety throughout the record that were consistent with and supported

22  Dr. Munshi's assessed limitations."  (*Id.* at 18.)  Finally, Plaintiff argues that the ALJ also

23  provided insufficient reasons for crediting the opinions of other medical sources.  (*Id.* at

24  18-20.)

25      The Commissioner disagrees and defends the sufficiency of the ALJ's rationale for

26  discrediting Dr. Munshi's opinions.  (Doc. 14 at 10-14.)  As for the ALJ's vagueness

27  rationale, the Commissioner argues that because Dr. Munshi "focused on Plaintiff's degree

28  of limitation, rather than her residual function, and those degrees of limitation were not

congruent with the agency's descriptors for assessing mental limitation," it was permissible for the ALJ "to consider 'other factors' like this when evaluating the persuasiveness of this opinion." (*Id.* at 10-11.)   Elsewhere, the Commissioner adds: "[T]he definition the form supplied—amount of time she would be off task—had no relevance to almost any of the areas assessed: It made no sense to say that Plaintiff's degree of impairment in her ability to relate to other people was 'Off task 16-20% of an 8-hour work day' or that her estimated degree of deterioration in personal habits was 'Off task 11-15% of the work day.'   The Court should defer to the ALJ's reasonable interpretation that this opinion was vague." (*Id.* at 12-13.)   The Commissioner further argues that the ALJ permissibly concluded that Dr. Munshi's opinions were "not supported by her treatment records" in light of Dr. Munshi's "own statements that Plaintiff could manage her finances and weigh the risks and benefits of sharing—or not—information regarding her psychiatric and suicidal status" and other notations that "generally showed Plaintiff was polite, pleasant, and cooperative, had linear thoughts, no suicidal ideation, improved insight, and intact judgment." (*Id.* at 11.)   As for the consistency factor, the Commissioner argues that the ALJ permissibly concluded that Dr. Munshi's opinions were "inconsistent with other evidence in the record," pointing specifically to a note from Plaintiff's counselor in which Plaintiff was described as a "coherent, intelligent, problem-solver who is fully capable of handling [her] own finances." (*Id.* at 11-12.)   As for Plaintiff' argument that "the ALJ needed to explain how unremarkable findings canceled out evidence of depression and anxiety that allegedly supported Dr. Munshi's opinion," the Commissioner responds that "[n]o such requirement exists in the regulations.   Moreover, the ALJ's evaluation only needs to be supported by substantial evidence; no balancing of the evidence is required." (*Id.* at 13-14.)   Finally, the Commissioner argues that Plaintiff's "under-developed complaints about the ALJ's evaluation of the prior administrative medical findings and Dr. Cunningham's opinion" do not, for various reasons, support reversal.  (*Id.* at 14-15.)

In reply, Plaintiff takes issue with "[t]he Commissioner's belief that an ALJ need not explain why they relied on evidence that supports only the ALJ's conclusions and

1  ignored or rejected evidence that is supportive of a claimant's disability," arguing that this
2  belief is "incorrect" and "contrary to" *Woods*.  (Doc. 17 at 7.)  Plaintiff also broadly
3  reiterates her contention that "[t]he ALJ failed to explain and articulate, with reasons
4  supported by substantial evidence, the supportability and consistency of . . . Dr. Munshi's
5  assessments, and therefore failed to meet the agency's and this Court's standards for
6  rejection of a medical source's assessment."  (*Id.* at 7-8.)

7            5.    Analysis

8        The ALJ's evaluation of Dr. Munshi's opinions is free of harmful error.  As noted,
9  "[t]he agency must articulate how persuasive it finds all of the medical opinions from each
10 doctor or other source and explain how it considered the supportability and consistency
11 factors in reaching these findings."  *Woods*, 32 F.4th at 792 (cleaned up).  Here, the ALJ
12 expressly considered both of the required factors in relation to Dr. Munshi.  (AR at 26
13 ["Significantly, the degree of limitation expressed by Dr. Munshi is contrary to her own
14 statements in treatment records . . . [and] contrary to the statements of the claimant's
15 counselor, who saw the claimant more frequently than Dr. Munshi . . . .  Because this
16 opinion is vague, contrary to notations in Dr. Munshi's treatment and examination notes,
17 and inconsistent with the record, it is not persuasive."].)

18       The ALJ's determination as to each factor was also supported by substantial
19 evidence.  Even assuming that the ALJ's "vagueness" rationale for discrediting Dr.
20 Munshi's opinions was erroneous,[3] this was not the ALJ's only reason for discrediting Dr.
21 Munshi's opinions pursuant to the supportability factor.  The ALJ also concluded that Dr.

22 _____

23 [3]     *Cf. Desrosiers v. Sec. of HHS*, 846 F.2d 573, 576 (9th Cir.1988) (faulting the ALJ
   for "not adequately consider[ing] th[e] distinction" when a medical source's opinions were
24 expressed in terms that did not directly correspond with the SSA's disability rating
   scheme); *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002) ("[T]he ALJ
25 may not disregard a physician's medical opinion simply because it was initially elicited in
   a state workers' compensation proceeding, or because it is couched in the terminology used
26 in such proceedings.  Instead, the ALJ must evaluate medical opinions couched in state
   workers' compensation terminology just as he or she would evaluate any other medical
27 opinion.  Proper evaluation of such medical opinions, however, does present an extra
   challenge.  The ALJ must 'translate' terms of art contained in such medical opinions into
28 the corresponding Social Security terminology in order to accurately assess the
   implications of those opinions for the Social Security disability determination.") (citations
   omitted).

Munshi's opined-to limitations were inconsistent with the observations set forth in Dr. Munshi's treatment notes.  This is, in general, a permissible basis for discounting a medical source's opinions pursuant to the supportability factor.  *See, e.g., Emsley v. Kijakazi*, 2022 WL 17039000, *1 (9th Cir. 2022) ("The ALJ properly addressed the supportability . . . of medical opinions by analyzing whether each opinion was supported by the doctor's clinical findings . . . .  For example, the ALJ found that . . . Dr. Wang's opinion was not supported by clinical notes . . . ."); *Reynolds v. Kijakazi*, 2022 WL 4095381, *1 (9th Cir. 2022) ("Substantial evidence supports the ALJ's determination that Dr. Johnson's early March 2018 opinions . . . were partially inconsistent with his own treatment notes . . . .").

The ALJ's finding of inconsistency is supported by substantial evidence.  In a February 2020 treatment note, Dr. Munshi described Plaintiff's behavior as "polite and cooperative, good eye contact, pleasant," described Plaintiff's thought process as "linear in stream with tight associations," described Plaintiff's insight as "improved," described Plaintiff's judgment as "intact," noted that Plaintiff was "frustrated" by the fact that the Veterans Administration was questioning "her competency to handle finances," and opined that Plaintiff was "capable of weighing the risks and benefits of giving or withholding information regarding psychiatric and suicidal status."  (AR at 602.)  Dr. Munshi made similar observations in August 2019 and January 2021 treatment notes.  (*Id.* at 629-30, 931-32.)  It was rational for the ALJ to conclude that these observations were inconsistent with some of Dr. Munshi's opinions, including the opinions that Plaintiff had limitations in her ability to perform even simple tasks and moderately severe limitations in her ability to understand, carry out, and remember instructions.  (*Id.* at 886, 1172.)  As with Dr. Clark, although Plaintiff attempts to explain how Dr. Munshi's observations could be construed as consistent with Dr. Munshi's opinions, it was rational for the ALJ to conclude otherwise. *Ghanim*, 763 F.3d at 1163.[4]

---

[4]     The Court notes that it disagrees with the Commissioner's seeming contention (Doc. 14 at 13-14) that an ALJ may cherry-pick only those pieces of evidence in the record that contradict a medical opinion and disregard other pieces of evidence that are consistent with the opinion.  "An ALJ may not cherry-pick a doctor's characterization of claimant's issues; she must consider these factors in the context of the doctor's diagnoses and observations of impairment."  *Fleenor v. Berryhill*, 752 F. App'x 451, 453 (9th Cir. 2018).  With that

1    For similar reasons, the Court finds no harmful error in the ALJ's evaluation of the

2    consistency factor.  The ALJ correctly noted that other providers' treatment notes contained

3    notations similar to the above-referenced notations in Dr. Munshi's notes.  (*See, e.g.*, AR

4    at 595 [February 2020 note from RN Compton: "Frustrated with inappropriate assessment

5    this veteran unable to manage finances requiring a fiduciary; the assessment is inaccurate

6    because veteran is coherent, intelligent, problem-solver who is fully capable of handing

7    finances"]; *id.* at 582 [September 2020 note from RN Compton, describing Plaintiff as

8    cooperative, pleasant, calm, logical, coherent, reality-based, and goal-directed]; *id.* at 586

9    [August 2020 note from RN Compton, containing same descriptors]; *id.*at 589 [May 2020

10   note from RN Compton, containing same descriptors]; *id.* at 939 [December 2020 note

11   from RN Compton, containing same descriptors].)  The Court has little trouble concluding

12   that it was rational for the ALJ to find a conflict between Dr. Munshi's description of

13   Plaintiff as a person who would experience limitation even when it came to performing

14   simple tasks (*id.* at 886) and RN Compton's description of Plaintiff as a "coherent,

15   intelligent, problem-solver" (*id.* at 595).  Given this conclusion, it is unnecessary to resolve

16   Plaintiff's other challenges to the ALJ's assessment of Dr. Munshi's opinions.  *See, e.g.*,

17   *Reed*, 834 F. App'x at 329; *Baker*, 720 F. App'x at 355; *Presley-Carrillo*, 692 F. App'x at

18   944-45.

19        C.    **Symptom Testimony**

20             1.    Standard Of Review

21    An ALJ must evaluate whether the claimant has presented objective medical

22   evidence of an impairment that "could reasonably be expected to produce the pain or

23   symptoms alleged."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)

24 ─────────────────

25   said, the ALJ did not engaged in impermissible cherry-picking here—the ALJ identified
     multiple instances, spanning a period of years, in which Dr. Munshi made notations in
26   treatment records that can be rationally construed as inconsistent with Dr. Munshi's
     opinions.  *Cf. Smith v. Berryhill*, 752 F. App'x 473, 475-76 (9th Cir. 2019) ("Viewed as a
27   whole, Smith's medical record includes numerous instances in which she described
     engaging in activities, on a regular basis, that contradict Dr. Sabahi's opinion regarding
28   Smith's degree of impairment.  Smith correctly notes that fibromyalgia symptoms can wax
     and wane, but the ALJ did not cherry-pick the medical record and it contradicts several of
     her symptom complaints.").

(citations omitted).  If so, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).  Instead, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" only by "providing specific, clear, and convincing reasons for doing so."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015).  In this analysis, the ALJ may look to "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)).

### 2.   The ALJ's Evaluation Of Plaintiff's Symptom Testimony

The ALJ began by providing the following summary of Plaintiff's testimony regarding her physical symptoms (as well as some of her mental symptoms):

> The claimant alleges disability due to a depressive disorder, chronic pain, degenerative joint disease in the lumbar spine, and Morton's toe in the right foot.  She described worsening symptoms over the course of her claim.  She has pain in her low back, right foot, and right hip on a daily basis.  She reported pain with most movement.  She described occasional suicidal ideations, particularly when her pain is increased.  The claimant alleges that her impairments cause difficulty lifting, squatting, bending, standing, walking, sitting, climbing stairs, remembering, completing tasks, concentrating, understanding, following instructions, and getting along with others.  Her testimony indicated that she could stand or walk for about 10 minutes before experiencing increasing pain.  She felt that she is able to sit for about an hour at a time despite discomfort.  Her statements indicated that she could lift about 10 pounds.  She does not manage the family finances because she cannot keep track of bills.  She described anger and agitation due to her condition, as well as social isolation.  Her reports indicated minimal activities of daily living; she prepares only simple, microwavable meals and is limited in her performance of household chores.  The claimant has had physical therapy, used medications, and had injections in attempts to manage her pain. She described using a cane.

(AR at 20, record citations omitted.)

After providing this summary, the ALJ identified what the Court perceives to be three reasons for deeming that testimony less than fully credible. (*Id.* at 21-23.) First, the ALJ concluded that although Plaintiff's claims regarding her "right foot injury," "lumbar degenerative disc disease," and "osteoarthritis and trochanteric bursitis of the right hip" were supported in part by the objective medical evidence, "the record does not support the intensity, persistence, or limiting effects that the claimant's attributes to these impairments." (*Id.* at 21-22.) The ALJ then elaborated on this finding of inconsistency with the objective medical evidence as follows:

> Significantly, the degenerative changes noted on imaging of her hip and back were relatively mild. Indeed, the most recent study, obtained in June of 2021 showed "no acute osseous abnormalities or advanced arthrosis." The interpreting radiologist even noted that the lower lumbar spine was unremarkable. . . . Normal mobility was otherwise noted. Indeed, at her consultative examinations, she was able to stand, walk, mount the examination table, stand on either foot, and squat independently and without difficulty despite endorsing low back pain. She exhibited normal gait while doing so. Examinations typically revealed grossly normal strength, sensation, and reflexes in her lower extremities. There were even notations of normal range of motion. Provocative tests, including straight leg raising . . . tests, were often negative. Significantly despite endorsing constant pain, she was typically observed to be in no acute distress. One provider even noted that her foot pain was disproportionate to the clinical findings.

(*Id.* at 22-23, record citations omitted.)

The ALJ's second proffered reason for discounting Plaintiff's testimony regarding her physical symptoms was that she had made false claims about cane usage. (*Id.* at 22 ["Contrary to reports that the claimant has used a cane for ambulation outside of the home for the past 8 to 10 years, there is no documentation of assistive device use by providers, even when there were gait disturbances."].)

The ALJ's third proffered reason for discounting Plaintiff's testimony regarding her physical symptoms was that Plaintiff experienced improvement from treatment. (*Id.* at 23 ["[I]t appears that treatment efforts improved her symptoms. When she was discharged

from physical therapy in early 2020 after 12 sessions . . . [s]he had achieved her goals, progressed to all goals, and was independent in her home exercise program.  She also endorsed sustained relief from radiofrequency nerve ablation in the past when requesting a subsequent procedure.  Further, she reported that she received relief from bursa injections lasting for about five months."].)

> Next, the ALJ summarized Plaintiff's testimony regarding her mental symptoms:
>
> The record demonstrates that the claimant was diagnosed with a bipolar disorder via psychological testing.  Symptoms included low mood, insomnia, fatigue, low self-esteem, excessive worry, difficulty controlling worry, irritability, muscle tension, sleep disturbance, and impairment in functioning.  There were also reports of memory problems and concentrating difficulty.  She reported being overwhelmed with family and personal tasks.  There were also notations of dysphoric, depressed, or anxious mood or affect with some incidences of tearfulness.  She also endorsed passive suicidal ideations, worsened by increased pain.

(*Id.* at 23, record citations omitted.)

After providing this summary, the ALJ identified what the Court perceives to be two reasons for deeming that testimony less than fully credible.  The first was a lack of support in the objective medical evidence.  (*Id.* ["[T]he medical evidence of record does not support the intensity, persistence or limiting effects that the claimant endorses."].)  On this point, the ALJ emphasized that Plaintiff "reported that her problems remembering and concentrating were mild," that "[e]ven when presenting with mood abnormalities, [Plaintiff] was cooperative, pleasant, and calm with normal speech, judgment, and insight, as well as logical and coherent thoughts," and that "[r]ecent therapy notes indicate that [Plaintiff] was alert, oriented, and cooperative with a self-reported okay mood and congruent affect."  (*Id.* at 23-24, record citations omitted.)

The ALJ's second proffered reason for discounting Plaintiff's testimony regarding her mental symptoms was that Plaintiff experienced improvement from treatment: "[D]espite the incidences of low and/or tearful mood, her mood swings were controlled with medication.  Indeed, providers noted that her bipolar disorder was stable."  (*Id.* at 23.)

1

### 3. The Parties' Arguments

Plaintiff argues that "[t]he ALJ committed materially harmful error by rejecting [her] symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in this record as a whole, when the limitations in [her] symptom testimony would make it impossible to perform any sustained work." (Doc. 12 at 20.) Plaintiff's overarching contention is that the ALJ merely "summarized portions of the medical evidence" and "failed to connect anything specific in the medical record to a specific inconsistency with any particular portion of [her] symptom testimony." (*Id.* at 22.) Plaintiff further contends that, "[w]ithin the ALJ's summary, the ALJ provided a litany of medical conclusions that . . . the ALJ was not qualified to render." (*Id.* at 22-23.) Next, Plaintiff accuses the ALJ of cherry-picking only certain pieces of evidence while failing to "explain why *other* symptoms and signs that corroborated [her] symptom testimony about chronic physical pain, depression, and anxiety were ignored." (*Id.* at 23-24.)

The Commissioner defends the sufficiency of the ALJ's reasoning, arguing that the ALJ properly discredited Plaintiff's symptom testimony based on (1) "objective evidence that contradicted Plaintiff's claims," including records in which "treatment providers characterized the objective findings [regarding Plaintiff's hip and back] as no worse than mild," records in which Plaintiff "could stand, walk, get onto the examination table, stand on either foot, and squat independently and without difficulty," and records that "documented normal strength, sensation, and reflexes in Plaintiff's legs, and some notations of normal range of motion"; (2) Plaintiff's false testimony regarding cane use; (3) evidence that Plaintiff's physical symptoms "improved with treatment"; and (4) evidence that Plaintiff's mental symptoms were mild and improved with treatment. (Doc. 14 at 15-18.)

In reply, Plaintiff accuses the Commissioner of misstating the applicable standard of review, reiterates her position that "the ALJ erred by failing to connect anything specific in the medical record to a specific inconsistency with any particular portion of [her] symptom testimony," accuses the Commissioner of relying on post hoc rationales, and

1    reiterates her position that the ALJ improperly cherry-picked certain pieces of evidence

2    while ignoring others.  (Doc. 17 at 8-10.)

3            4.    Analysis

4            The Court finds no harmful error in the ALJ's evaluation of Plaintiff's symptom

5    testimony.   One of the ALJ's proffered reasons for discounting Plaintiff's testimony

6    regarding her physical symptoms was that it was inconsistent with the objective medical

7    evidence in the record.  Although this may not serve as an ALJ's sole reason for discounting

8    a claimant's symptom testimony, it is a permissible consideration when (as here) it is

9    coupled with other grounds for an adverse credibility finding.  *Smartt v. Kijakazi*, 53 F.4th

10   489, 498 (9th Cir. 2022) ("Claimants like Smartt sometimes mischaracterize [Ninth Circuit

11   law] as completely forbidding an ALJ from using inconsistent objective medical evidence

12   in the record to discount subjective symptom testimony.  That is a misreading of [Ninth

13   Circuit law].   When objective medical evidence in the record is *inconsistent* with the

14   claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such

15   testimony.  We have upheld ALJ decisions that do just that in many cases."); *Rollins v.

16   Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) ("While subjective pain testimony cannot be

17   rejected on the sole ground that it is not fully corroborated by objective medical evidence,

18   the medical evidence is still a relevant factor in determining the severity of the claimant's

19   pain and its disabling effects.").

20          The ALJ's finding of inconsistency with the objective medical evidence is supported

21   by substantial evidence.  Medical providers repeatedly noted either normal or slightly

22   abnormal findings with respect to Plaintiff's physical condition and ability to sit, stand,

23   walk, and lift.  (*See, e.g.*, AR at 879-81 [December 2020 consultative examination note,

24   reflecting ability to stand, walk, mount the examination table, stand on either foot, and

25   squat independently and with minimal difficulty]; *id.* at 1050 [April 2021 consultative

26   examination note, reflecting same observations]; *id.* at 1081 [June 2021 study, showing

27   "no acute osseous abnormalities or advanced arthrosis" and "unremarkable" lower lumbar

28   spine]; *id.* at 1079 [June 2021 note: "Ambulating without assistive device.   Mildly

antalgic."].)  However, Plaintiff asserted in her function report that "all physical activity has become impossible" and that "even the smallest task causes prolonged pain and requires hours or days of rest."  (*Id.* at 273, 276.)  Similarly, when asked during the hearing to describe her "ability to walk, stand, sit," Plaintiff testified that she has "difficulty doing any of those things for any amount of time."  (*Id.* at 45.)  It was rational for the ALJ to view the cited records as inconsistent with Plaintiff's testimony.

Another of the ALJ's reasons for discrediting Plaintiff's symptom testimony was that she had made false or exaggerated claims about cane usage.  (*Id.* at 22 ["Contrary to reports that the claimant has used a cane for ambulation outside of the home for the past 8 to 10 years, there is no documentation of assistive device use by providers, even when there were gait disturbances."].)   This, too, qualifies as a specific, clear and convincing reason under Ninth Circuit law for discrediting a claimant's symptom testimony.  *See, e.g.,* *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (concluding that "the ALJ did offer clear and convincing reasons for rejecting Verduzco's testimony" where "the ALJ noted that the appellant had walked slowly and used a cane at the hearing, although none of his doctors had ever indicated that he used or needed to use an assistive device in order to walk" and "two doctors had specifically noted that the appellant did not need such a device"); *Donathan v. Astrue*, 264 F. App'x 556, 558 (9th Cir. 2008) (concluding that "the ALJ provided clear and convincing reasons for rejecting Donathan's subjective allegations" where the ALJ "offered several reasons supporting the adverse credibility determination, including . . . inconsistencies regarding Donathan's need for use of a cane or scooter"); *Doyle v. Comm'r of Soc. Sec. Admin.*, 2022 WL 4354608, *6 (D. Ariz. 2022).

The ALJ's conclusions on this point—which Plaintiff does not acknowledge in her opening or reply brief, let alone attempt to dispute—are supported by substantial evidence. In her function report, Plaintiff checked a box indicating that she used a cane.  (AR at 275.) Likewise, Plaintiff told the consultative examiner that "she does occasionally use a cane to assist with ambulation that she obtained on her own."  (*Id.* at 1048.)   However, the consultative examiner noted that Plaintiff "presented to the appointment with no cane."

(*Id.*)  The ALJ also identified multiple other records in which there was "no documentation of assistive device use by providers."  (*Id.* at 22, citing *id.* at 386, 589, 686, 1079 ["Ambulating without assistive device."].)  On this record, it was rational for the ALJ to conclude that Plaintiff had made inaccurate or exaggerated statements regarding her cane use and to discount Plaintiff's credibility on that basis.  *See also Tommasetti*, 533 F.3d at 1039 ("The ALJ may consider . . . ordinary techniques of credibility evaluation, such as . . . other testimony by the claimant that appears less than candid . . . .") (citation omitted); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (identifying a "tendency to exaggerate" as a "specific and convincing reason[] . . . for discrediting [a claimant's] testimony").

Because the ALJ identified multiple clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's symptom testimony, it is unnecessary to resolve Plaintiff's objections to the additional rationales the ALJ offered for discrediting her testimony.  Any error as to those additional rationales was harmless.  *See, e.g., Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) ("Because we conclude that two of the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error. . . .  [T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, it is whether the ALJ's decision remains legally valid, despite such error. . . .  Here, the ALJ's decision finding Carmickle less than fully credible is valid, despite the errors identified above.").

…

…

…

…

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**.  The Clerk shall enter judgment accordingly and terminate this action.

Dated this 25th day of September, 2023.

Dominic W. Lanza
United States District Judge